### L. E. WEAVER V. THE STATE.

No. 15249. Delivered June 15, 1932.
Appeal Reinstated October 12, 1932.
Reported in 53 S. W. (2d) 483.

The opinion states the case.

*G. C. Lowe,* of Woodville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of hogs; the punishment, confinement in the penitentiary for two years.

The transcript filed in this court on February 27, 1932, shows that the motion for new trial was overruled November 5, 1931, and appellant sentenced on the same date. In this transcript is an amended motion for new trial which appears to have been filed on December 5, 1931. The recognizance found in the transcript has no date, and there is nothing in the record by which we may ascertain when same was entered into. On May 4, 1932, a supplemental transcript was filed in this court. In this transcript it appears that the motion for new trial was overruled December 5, 1931, and notice of appeal given on the same date. The sentence shown in said supplemental transcript bears date December 5, 1931. The entries made on the court's trial docket are brought forward in the supplemental transcript. These entries fail to show the date of the recognizance. As far as the record reflects the matter, the recognizance might have been entered into before notice of appeal was given. In the state of the record we are unable to determine whether the recognizance was entered into at the proper time. Hence it becomes our duty to dismiss the appeal. Gerlach v. State, 115 Texas Crim. Rep., 132, 29 S. W. (2d) 349; Roth v. State, 115 Texas Crim. Rep., 500, 27 S. W. (2d) 183.

Appellant is granted fifteen days from this date in which to perfect his appeal.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION TO REINSTATE APPEAL.

LATTIMORE, JUDGE.—In a second supplemental transcript it is made to appear that in the recognizance entered into by appellant and his sureties the date of the recognizance is set forth. The appeal will be reinstated, and the case considered upon its merits.

The evidence is in much conflict and presents a somewhat unusual case. Appellant and the prosecuting witness Ogden each had a number of hogs running on apparently the same general range. Ogden testified that one of his sows, which was unmarked, was missed by him in the summer of 1929, and that in December following she returned to his place, and when she came back she bore appellant's mark. He also testified that not long afterward he met appellant in the woods and had a conversation with him regarding the sow in question. He said he told appellant that the sow was his and that she had been gone, and that when she came back she bore appellant's mark. He further testified that when he made this statement appellant studied a little bit and said, "Yes, I marked a sow; she came up to my place a time or two, and she was unmarked and I didn't know whose she was, and I let her in the patch." Witness said he asked appellant what he marked her for, and appellant said she needed marking, and he did not know that she was not his hog. He testified further that appellant said he did not know for sure whose hog it was, and that if witness claimed her he could have her back. The hog continued to run on the range, and it is shown by testimony that when appellant moved from that locality he gave a bill of sale to a man named Warren, selling him all hogs in his (appellant's) mark, but especially excepting from the sale the sow in question.

Appellant introduced a number of witnesses who testified substantially that they were acquainted with appellant's hogs, and had seen the sow in question, and that in flesh marks and color she corresponded with appellant's hogs, and that they saw her with a bunch of appellant's unmarked hogs during the fall of 1929, and that at that time she was running around in the neighborhood of appellant's home with appellant's hogs. One of these witnesses testified that he asked appellant why he had not marked this particular sow, to which appellant replied that he was waiting because he wanted to be sure that no one else claimed her. This witness said he told appellant that the hog in question fit in flesh marks with the others of appellant's hogs; that witness thought she was appellant's hog. Appellant's father testified that he lived near appellant from some

time early in 1929 until about September, and that the hog in question was running with appellant's hogs all the time. Appellant's wife testified that some time about the first of June the sow in question came to their place, and that she was about the right size to belong to a bunch of shoats of theirs which had gone away unmarked, and that they believed her to be theirs; that she was around their place regularly during 1929 running with a bunch of their hogs. Defense witness Hicks testified that he saw the hog in question running with a bunch of unmarked shoats and asked appellant why he had not marked her, and that appellant told him he was waiting; that he wanted to be sure. Witness told appellant that from the flesh marks that might be appellant's hog. Appellant replied that he wanted to be sure; that he did not want to mark anybody else's hog. Witness knew that appellant had a number of hogs that had gone away about a year or year and a half before, and that the sow in question could have been a pig of one of those that left; that it fit with the flesh marks; and that witness thought it was Weaver's hog. The defense introduced the county judge, who testified that along in the fall of 1929 appellant came to see him, and told him that a bunch of his hogs had strayed away some time before, and that there was an unmarked sow out around his place that had flesh marks like his hogs, and that he was sure that it was one of his hogs, and wanted to know if it would be all right for him to mark her. Witness said that he advised appellant that if he was sure it was his hog it would be all right for him to go ahead and mark it. Appellant testified that he believed the hog was his, and that after observing it running with his hogs for a good while and after talking to the county judge about it, he marked it.

By three bills of exception appellant complains of the fact that the state was allowed to prove, over objection, that other parties, who had hogs on the same general range as that of appellant and prosecuting witness, had their unmarked hogs marked in appellant's mark, but none of them undertook to say that they had ever seen appellant mark them, or that appellant had ever made any claim to any of their hogs, or that appellant had taken any of their hogs from their possession. We think the testimony was inadmissible, and that the admission of same must have brought about appellant's conviction. It is extremely doubtful under the testimony in this case whether in any event a conviction should be upheld. Appellant and his wife both testified they were claiming the hog in question and believed it to be theirs. Prosecuting witness and another

claimed the hog belonged to Mr. Ogden. Questions of property rights and ownership of animals ought to be settled in civil proceedings and not in criminal courts.

For the admission of the testimony above referred to, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*